# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | ) |
| | ) |
| vs. | ) Criminal Action No. 16-00087-KD-C |
| | ) |
| **BRANDON WAYNE BULLOCK,** | ) |
| | ) |
| **Defendant.** | ) |

## ORDER

This action is before the Court on Defendant Brandon Wayne Bullock's emergency motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) or home confinement under the Coronavirus Aid, Relief, and Economic Security Act (CARES Act), Pub. L. No. 116-136, § 12003(b)(2), 134 Stat. 281, 516 (doc. 195), the United States' response (doc. 198), Bullock's letter and reply (docs. 200, 202), letters in support (docs. 194, 199),[1] and the United States' notice (doc. 204).[2] Upon consideration, and for the reasons set forth herein, the motion

---

[1] Bullock's parents are concerned for their son's health because of the number of Covid 19 cases reported at the prison where he is confined. In support of release, they state that Bullock has not been violent in prison, is not a flight risk, that he attended all court hearings, and if released, they will make sure he continues to comply with the Court's conditions of release (doc. 194). Bullock's cousin is also concerned for his health and writes to support early release. She states that Bullock is a non-violent person who poses a minimal likelihood of recidivism. She points out that Bullock is currently housed in a low risk unit, has completed four years of his ten-year sentence. (doc. 199).

[2] Bullock's requests for appointment of counsel (doc. 195, p. 4, doc. 201) is DENIED. There is no constitutional or statutory right to counsel for "motions filed under § 3582; therefore, 'the decision to appoint an attorney is left to the discretion of the district court.'" United States v. Reese, No. 2:12-CR-87-WKW, 2020 WL 3621316, at *1 (M.D. Ala. July 2, 2020) (quoting United States v. Webb, 565 F.3d 789, 792 (11th Cir. 2009)) (addressing the right to counsel in the context of a § 3582(c)(2) motion). The Court finds that appointment of counsel is not necessary. Movant has shown the ability to effectively set forth the facts, claims and argument and otherwise prosecute this action. Additionally, the claims are not factually and legally complex or exceptional such that appointment of counsel would be warranted.

for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) is GRANTED. Defendant Bullock's sentence is reduced to time served, effective Thursday, September 17, 2020. Bullock's Judgment in a Criminal Case (doc. 139) shall be amended to include as a Special Condition of Supervised Release that Bullock serve the first year of supervision on home confinement with electronic monitoring. In all other respects, the Judgment remains in full force and effect. The motion for home confinement under the CARES Act is DENIED.

I. Background

In April 2016, Bullock and two co-defendants were indicted for offenses related to controlled substances (doc. 33). The Indictment was superseded. He and his co-defendants were charged with conspiracy to possess with intent to distribute methamphetamine (Count One), conspiracy to possess with intent to distribute marijuana (Count Two), possess with intent to distribute methamphetamine (Count Three) and possess with intent to distribute marijuana (Count Four) (doc. 89).

Bullock pled guilty to Count One. His total offense level was 29, his criminal history category was III and his sentencing guidelines range was 120 to 135 months. Bullock was determined to be a minor participant in the offense. On November 18, 2016, he was sentenced to a term of 120 months, the statutory mandatory minimum for this offense (doc. 139).

Bullock is now 36 years old. He is incarcerated at FCI Yazoo City Low in Yazoo City, Louisiana. He has served approximately four years of his ten-year sentence. His estimated release date is May 25, 2025.

II. Exhaustion

In relevant part, the compassionate release provision of 18 U.S.C. § 3582(c)(1), as amended by the First Step Act of 2018, provides that "the court . . . upon motion of the defendant

after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment" after considering the [applicable] factors set forth in 18 U.S.C. § 3553(a)".  The Court may do so upon finding that "extraordinary and compelling reasons warrant such a reduction" and the reduction is "consistent with applicable policy statements issued by the [United States] Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i); First Step Act of 2018, Pub. L. 115-391, § 603(b), 132 Stat. 5194, 5239.

In his emergency motion signed May 4, 2020, Bullock did not allege that he met either statutory exhaustion requirement (doc. 195).  However, Bullock attached a copy of his April 3, 2020, "Request for Administrative Remedy" (doc. 195, p. 8).[3]  The United States argues that the Court should dismiss Bullock's motion without prejudice because the Request did not contain the minimum information required by the Bureau of Prisons in its Program Statement 5050.50. The United States points out that as of May 22, 2020, the Warden had not acted on Bullock's request (doc. 198).

In reply, Bullock argues that he meets the exhaustion requirements in 18 U.S.C. § 3582(c)(1)(A)(i) because he "filed a request to the Warden of his facility" and "30 days has lapsed without a response from the Warden" (doc. 202, p. 13). He also rebuts the United States' argument that he did not include the necessary information required by Program Statement 5050.50, by arguing "[n]othing in 18 U.S.C. § 3582 requires a defendant" to include this information.  (Id., p. 14).  Bullock also asserts that he made a "proper request to the Warden

---

[3] Bullock also provided a copy of his March 6, 2020 "Inmate Request to Staff" wherein he references the "First Step Act and BOP memo dated 4-4-2019" and asks for the maximum of one year in home confinement (doc. 195, p. 7).  There is no mention of Covid-19.

3

pursuant to B.O.P. P.S. 1330.18 § 542.14 and 30 days have lapsed without a response from the Warden." (Id., p. 4).[4]  Bullock also argues that the Court has jurisdiction to waive the exhaustion requirement (Id., p. 14-15).

Regardless of the sufficiency of Bullock's Request, he filed his motion on May 4, 2020, more than 30 days after he made the Request for Administrative Remedy on April 3, 2020. Therefore, the Court finds that Bullock has met the exhaustion requirement of 18 U.S.C. 3582(c)(1)(A).[5]

III. Compassionate release

Once a sentence is imposed, the "authority of a district court to modify an imprisonment sentence is narrowly limited by statute." United States v. Phillips, 597 F.3d 1190, 1194-95 (11th Cir. 2010); United States v. Shaw, 711 Fed. Appx. 552, 554-55 (11th Cir. 2017) (same).

---

[4] Despite Bullock's argument that he made a request pursuant to Program Statement 1330.18, the Request for Administrative Remedy states that it is made "Per the First Step Act, CARES Act and BOP PS 5050.50" (doc. 195, p. 8; doc. 202, p. 19).

[5] The United States cites United States v. Ambrose, 2020 WL 1670396 (S.D. Ala. Apr. 3, 2020) in support of its argument that the Court may find lack of exhaustion based on the sufficiency of the request. Ambrose sought an early release for an "Act of Heroism" because he came to the aid of a correctional officer who was under assault by an inmate.  The Court found that he had not met the minimum requirements in his request to the Warden.  Ambrose did not ask the Warden for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A) or invoke the First Step Act. Instead, he asked for a "letter of recommendation under P.S. 5880.30 for an Act of Heroism," or for "good time for the Act of Heroism and any other possible remedies" Id., *1.  In contrast, Bullock's request specifically invoked the First Step Act and the CARES Act and explained that "extraordinary and compelling circumstance exist in my case.  As of today, there are two confirmed cases of Covid-19 in my housing Unit B1.  We are in quarantine now.  I am a minimum security and low recidivism risk inmate. I have pre-existing conditions. There is no hand sanitizer or personal protective equipment available to me." (doc. 195, p. 8).  Although, Bullock did not include any proposed release plans, he did include the extraordinary and compelling circumstances that he believed warranted consideration.  He invoked the First Step Act, even though he did not specifically mention 18 U.S.C. § 3582(c)(1)(A).  The First Step Act amended 18 U.S.C. § 3582(c)(1)(A) to allow inmates to file a motion for compassionate release in the Court after exhaustion of their administrative remedies

4

Specifically, the "court may not modify a term of imprisonment once it has been imposed except" as set out in 18 U.S.C. § 3582(c). See United States v. Pubien, 805 Fed. Appx. 727, 730, (11th Cir. Feb. 25, 2020) (quoting 18 U.S.C. § 3582(c)).

The compassionate release provision of 18 U.S.C. § 3582(c)(1)(A)(i) provides that the Court "may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the [applicable] factors set forth in 18 U.S.C. § 3553(a)", if the Court finds that "extraordinary and compelling reasons warrant such a reduction" and the reduction is "consistent with applicable policy statements issued by the [United States] Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A).

"Extraordinary and compelling" reasons are not defined in the statute.  Instead, Congress gave the Sentencing Commission the duty to promulgate general policy statements regarding sentence modifications pursuant to 18 U.S.C. § 3582(c)(1)(A) and stated that the Commission "shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t). Congress also stated that "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." Id.

Before the First Step Act, the Sentencing Commission promulgated the following Policy Statement, which set forth in relevant part, as follows:

> Upon motion of the Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that—

>(1) (A) [6] Extraordinary and compelling reasons warrant the reduction; . . .
>
>(2) The defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
>
>(3) The reduction is consistent with this policy statement.

U.S.S.G. § 1B1.13.

The Commentary to the Policy Statement includes four examples of extraordinary and compelling reasons to consider a reduction of sentence under § 3582(c)(1)(A). Bullock's alleged reasons fall under two examples found in Application Notes 1(A)(ii)(I)[7] and (D) (docs. 779, 789). Specifically, Bullock states that he is incarcerated at FCI Yazoo City Low where there are confirmed deaths from Covid-19 and numerous inmates testing positive, including more than twenty inmates in his housing unit (docs. 195, 200, 202). Bullock states that he has hypertension and obesity,[8] which put him at greater risk of serious illness or death should he contract Covid-19 (Id.) Bullock states that he is housed in an open dormitory with inmates who have been

---

[6] The Policy Statement indicates that release may be appropriate when defendants are at least 70 years of age and have served at least 30 years in prison for the offense of conviction. 18 U.S.C. § 3582(c)(1)(B). Bullock is 36 years old and has served approximately 48 months of his 120-month sentence, or approximately 40%.

[7] Application Note 1(A)(i) provides that compassionate release may be appropriate when the "defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory)" without a specific prognosis of death. Application Note 1(B) provides that compassionate release may be appropriate when defendants are at least 65 years old; experiencing a serious deterioration in physical or mental health because of the aging process; and have served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less. Application Note 1(C) provides for certain family circumstances that may be grounds for compassionate release. U.S.S.G. 1B1.13, cmt. 1(A)(i); (B) and (C). Bullock is 36 years old. He has not alleged a terminal illness or qualifying family circumstances.

[8] Bullock states that his Body Mass Index is over 40 (doc. 202, p. 10). According to the Centers for Disease Control and Prevention, a body mass greater than 40 is considered severe or extreme obesity. https://www.cdc.gov/obesity. His medical records confirm a diagnosis of obesity and hypertension, with treatment by medication and weight loss counseling (doc. 203-1).

exposed to Covid-19, and because of this, he cannot provide self-care. Specifically, he cannot practice effective social distancing and hygiene to minimize his risk of exposure to Covid-19 (docs. 195, 202). Bullock points out that staff at the facility leave and return daily, which increases the potential to spread the virus (doc. 202). He also states that FCI Yazoo is a quarantine site for new inmates (doc. 200).

Bullock argues that the presence of Covid-19 creates an extraordinary and compelling reason for compassionate release for inmates in general "and even more so for inmates with pre-existing conditions" (doc. 202). In support, Bullock relies upon the agreement of public health experts that inmate living conditions, combined with the difficulty of controlling Covid-19 in the prison setting and the limited ability of inmates to take protective measures, place inmates at special risk of infection from Covid-19 (doc 202). Bullock argues that the Court did not sentence him to death, but instead to 120 months. He moves the Court to reduce his sentence to time served and impose a term of supervised release.

The United States agrees that during the Covid-19 pandemic, Bullock's BMI of over 30 is "'a serious physical or medical condition . . . that substantially diminishes'" his ability to provide self-care and from which he is not expected to recover (doc. 205, citing Application Note 1(A)(ii)(I) of the Policy Statement and *Centers for Disease Control, At Risk for Severe Illness,* available at https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html (last updated July 30, 2020).)). The United States concedes that because Bullock's ability to provide self-care against Covid 19 is substantially diminished due to his obesity, he has set forth extraordinary and compelling reasons for compassionate release (Id.)

Application Note 1(A)(ii) provides that a defendant's physical or medical condition may qualify if certain criteria are met. Specifically, if the defendant is -

>  (I) suffering from a serious physical or medical condition, . . .
>
>  that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

U.S.S.G. § 1B1.13 cmt. n. 1(A).[9]

Application Note 1(D), provides that the Court may consider "Other Reasons – As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." U.S.S.G. §1B1.13 cmt. n. (1)(D).  In its present version, Application Note 1(D) "leaves identification of other 'extraordinary and compelling reason[s]' to the Director of the Bureau of Prisons." United States v. Fox, No. 2:14-CR-03-DBH, 2019 WL 3046086, at * 3 (D. Me. July 11, 2019).  But now that the First Step Act allows the inmate to move for compassionate release without the BOP's support, it is unclear what "other" reasons can be relied upon for compassionate release.  However, the Court finds that until the Sentencing Commission amends its Policy Statement "those other extraordinary and compelling reasons should be comparable or analogous to what the Commission has already articulated as criteria for compassionate release." United States v. Fox, 2019 WL 3046086, at *3.

The United States concedes that Bullock has met his burden to show extraordinary and compelling reasons as defined by statute.  However, the Court may grant a reduction of sentence for early release only "after considering the [applicable] factors set forth in 18 U.S.C. § 3553(a)" 18 U.S.C. § 3582(c)(1)(A).  In that regard, Bullock argues that the applicable factors in 18 U.S.C. § 3553(a) support his request for compassionate release (doc. 202).  Specifically, Bullock

---

[9] Bullock does not allege that he is "suffering from a serious functional or cognitive impairment" or that he is "experiencing deteriorating physical or mental health because of the aging process[.]" U.S.S.G. § 1B1.13 cmt. n. 1(A)(ii).

asserts that a reduced sentence to time served would still address the seriousness of the offense, the need to deter criminal conduct, protect the public, and respect for the law (docs. 195, 202). He points out that he committed a non-violent offense and is housed at a low security facility where he has participated in recidivism reduction programs and maintained a job (doc. 202). Bullock also states that the Court already found he was not a danger to the safety of the public pursuant to the Bail Reform Act when he was released on conditions of supervision pending trial (doc. 195, doc. 202).

The United States argues that the Court should not reduce Bullock's sentence based on the severity of the offense (the quantity of drugs) and Bullock's criminal history (two prior drug offenses) (doc. 205, doc. 198). In the alternative, the United States asserts that if the Court reduces Bullock's sentence to time served, he should be placed on home confinement as a condition of supervised release (doc. 198, p. 25).

The Court has considered the "nature and circumstances" of Bullock's offense and finds that this factor weighs in favor of a sentence reduced to time served. 18 U.S.C. § 3553(a)(1). Bullock was involved in a drug trafficking conspiracy with two co-defendants by which methamphetamine and marijuana were transported between California and Mississippi by way of the United States Postal Service. Bullock's role in the offense was to drive his co-defendant to the post office to pick up the drugs. Bullock received a minor role reduction but did not receive the full benefit of the reduction due to the mandatory minimum.

Bullock's "history and characteristics" are a mixed bag. On one hand, his criminal history includes two convictions for sale of cocaine for conduct occurring in 2004 and 2008. At the time of sentencing in this action (2016), his conditions of release had been revoked for being untruthful regarding his attendance at work. However, he has some work history and has a CDL

license and strong family ties.  He also has no violence in his history, nor was there any evidence of violence or guns in the current offense.

The Court finds that a reduced sentence to time served (4 years) with the first year of supervised release to be served in home confinement with electronic monitoring will reflect the "seriousness of the offense", "promote respect for the law", "provide just punishment for the offense", adequately deter criminal conduct and "protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a)(1) and (a)(2)(A), (B), & (C).  Accordingly, Bullock's motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A) is GRANTED.

IV.  CARES Act

As an alternative to his motion for reduction of sentence to time served pursuant to 18 U.S.C. § 3582(c)(1)(A), Bullock requests the Court modify his sentence so that he may serve the remainder on home confinement pursuant to the CARES Act (doc. 195; doc. 202).  Bullock explains that he meets the criteria for home confinement. Specifically, he is detained at a low security prison, housed at a facility with many reported cases of Covid-19, and the Bureau of Prisons has been unable to control the outbreak of Covid-19 at his facility (doc. 202, p. 10-11).

The United States argues that the Court lacks authority to direct the Bureau of Prisons to release Bullock to home confinement (doc. 198, p. 25-27).  The United States points out that the CARES Act expands the Bureau of Prisons Director's authority to extend the maximum amount of time for which an inmate may be placed under home confinement but did not give any authority to the Court to release an inmate to serve the remainder of their sentence on home confinement or to order the Bureau of Prisons to do so.

Previously, the Bureau of Prisons had authority to "place a prisoner in home confinement for the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months." 18

U.S.C. § 3624(c)(2) (as amended by the First Step Act of 2018, Pub. L. 115-391, Title I, § 102(b)(1), Title VI, § 602, 132 Stat. 5210, 5233, 5238) (effective Dec. 21, 2018).  Additionally, the statute requires that the Bureau of Prisons "to the extent practicable, place prisoners with lower risk levels and lower needs on home confinement for the maximum amount of time permitted under this paragraph." Id.

Under the CARES Act, effective March 27, 2020, the BOP Director was permitted to lengthen the maximum amount of time a prisoner may be placed in home confinement, in certain circumstances and during a specified period of time after the declaration of national emergency due to Covid 19, if the Attorney General found that emergency conditions would materially affect the functioning of the BOP.  CARES Act, Pub. L. 116-136, § 12003(b)(2).[10]

On April 3, 2020, Attorney General William Barr made this finding and gave the Director authority to exercise this discretion. The Director was directed to "immediately review all inmates who have COVID-19 risk factors, as established by the CDC, starting with the inmates incarcerated at FCI Oakdale, FCI Danbury, FCI Elkton, and similarly situated facilities where you determine that COVID-19 is materially affecting operations." Memorandum from Attorney General William Barr to Director of Bureau of Prisons, Increasing Use of Home Confinement at Institutions Most Affected by COVID-19 (April 3, 2020),

https://www.justice.gov/file/1266661/download

However, the CARES Act did not give the Court authority to direct the BOP to consider release to home confinement or direct the BOP to place a defendant in home confinement for the

---

[10] "Home Confinement Authority.  During the covered emergency period, if the Attorney General finds that emergency conditions will materially affect the functioning of the Bureau, the Director of the Bureau may lengthen the maximum amount of time for which the Director is authorized to place a prisoner in home confinement under the first sentence of section 3624(c)(2)

11

remainder of the sentence.  Under 18 U.S.C. § 3621(b), the BOP "shall designate the place of the prisoner's confinement".   Therefore, Bullock's motion pursuant to the CARES Act is DENIED. See United States v. Allen, 2020 WL 2199626, at *1 (S.D. Ga. May 6, 2020) ( finding that a "request for home confinement under the CARES Act is different than a reduction-in-sentence (RIS) request based upon compassionate release" and that the statutes used to implement the CARES Act, 18 U.S.C. § 3624(c)(2) and 34 U.S.C. § 60541, "do not authorize a federal court to order the BOP to release a prisoner.")

      **DONE** and **ORDERED** this 9th day of September 2020.

                                        **s / Kristi K. DuBose**
                                        **KRISTI K. DuBOSE**
                                        **CHIEF UNITED STATES DISTRICT JUDGE**

---

of title 18, United States Code, as the Director determines appropriate." CARES Act, P.L. 116-136, § 12003(b)(2) (2020).